UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAVELLE MALONE, <br><br> Plaintiff, <br><br> v. <br><br> JAMES WATSON, et al., <br><br> Defendants. | CAUSE NO. 3:24-CV-986-HAB-SLC |

OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, filed a complaint. ECF 1. "Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Malone is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Malone alleges that on June 24, 2024, at approximately 7:00-8:00 A.M., he was subjected to a strip search at the Miami Correctional Facility by Sgt. James Watson and Sgt. Mackenzie Mallott. According to Malone, Sgt. Watson ordered him to strip in the entryway of his cell while other officers watched. He was told to "open my mouth, lift my tongue, run my fingers behind my ears, lift my genitals, spread my ass cheeks, and cough." ECF 1 at 2. Malone states the strip search was unnecessary because there was "no riot, no officers, nor staff hurt, nor any offenders hurt in L housing unit on the ¾ side." *Id*. He states the "demeanor and attitudes" of Sgt. Watson and Sgt. Mallott during the strip search show it was "done to 'punish' me." *Id*. at 3. He claims Sgt. Watson told him "we are in charge" and made it clear the search was in retaliation for the conduct of other offenders. *Id*. He asserts the strip search was "conducted in [a] deliberately harassing and humiliating way." *Id*. at 2. He has sued Sgt. Watson and Sgt. Mallott for monetary damages and "a restraining order so defendants can stop retaliating against me for exercising my constitutional rights." *Id*. at 4.

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under both the Fourth and Eighth Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights." *Id*. at 781. In either case, however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to

2

> guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id*. at 779 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id*. at 781. When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id*. at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*.  The following situations have been recognized as reasonable because the level of intrusion did not outweigh the purported justification—conducting thorough searches as part of the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoner left or returned to maximum security unit. *Id*. at 783–84 (collecting cases). In general, courts

3

must consider whether the searches were unreasonable in light of: (1) the scope of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id.* at 784 (quoting *Bell*, 414 U.S. at 559). For claims brought under the Eighth Amendment, there is also a heightened subjective intent requirement. *Id.* at 780. This is because the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id.* at 781.

      Malone states he is bringing his claims pursuant to the Fourth and/or Eighth Amendments and insists the search was done as a form of punishment to harass and humiliate him, not for the purpose of finding any contraband on his person. Admittedly, Malone's allegations are sparse, but he must be given the benefit of the inferences to which he is entitled upon pleading. Although further investigation may reveal the actions of the officers were constitutional under the circumstances, at this early stage he has stated plausible claims against the officers for the strip search itself. *See e.g., Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) ("[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional.") (internal quotation marks and citation omitted)). However, to the extent he claims he was observed by other officers near the cell at the time of the search, these allegations fail to state a claim.

4

*Henry*, 969 F.3d at 783 ("incidental observations of undressed inmates" are "almost always reasonable").[1]

For these reasons, the court:

(1) GRANTS Lavelle Malone leave to proceed against Sgt. James Watson and Sgt. Mackenzie Mallott in their individual capacities for compensatory and punitive damages for subjecting him to an unconstitutional strip search on June 24, 2024, at approximately 7:00-8:00 A.M., in violation of the Fourth and/or Eighth Amendments;

(2) DISMISSES all other claims;

(3) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. James Watson and Sgt. Mackenzie Mallott at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1);

(4) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

---

[1] He also requests a "restraining order" to ensure the defendants stop "retaliating" against him (ECF 1 at 4), but Malone's allegations regarding retaliation are far too vague to state such a claim. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original). Moreover, because he has been granted leave to proceed on Fourth and/or Eighth Amendment claims for the strip search itself, it would be redundant to allow him to proceed on a retaliation claim for those same events. *See e.g., Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) ("The remainder of [plaintiff's] substantive legal theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim.); *Conyers v. Abitz*, 416 F.3d 580, (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels").

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. James Watson and Sgt. Mackenzie Mallott to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 22, 2025.

s/ Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT