UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAVELLE MALONE,<br><br>Plaintiff,<br><br>v.<br><br>JAMES WATSON and MACKENZIE MALLOTT,<br><br>Defendants. | CAUSE NO. 3:24-CV-986-HAB |

OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, is proceeding in this case "against Sgt. James Watson and Sgt. Mackenzie Mallott in their individual capacities for compensatory and punitive damages for subjecting him to an unconstitutional strip search on June 24, 2024, at approximately 7:00-8:00 A.M., in violation of the Fourth and/or Eighth Amendments[.]" ECF 6 at 5. On May 7, 2026, the defendants filed a motion for summary judgment. ECF 34. With the motion, the defendants provided Malone the notice required by N.D. Ind. L.R. 56-1(f). ECF 37. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a Response to Statement of Material Facts, which includes a citation to

evidence supporting each dispute of fact. The deadline has passed, and Malone has not responded. The motion is ready for a ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Because Malone has not responded to the summary judgment motion, the court accepts the defendants' properly supported factual assertions as undisputed. Fed. R. Civ. P. 56(e)(2). His failure to respond does not automatically entitle the defendants to

judgment; they must still show that the undisputed facts warrant judgment as a matter of law. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

Convicted prisoners retain a diminished right to bodily privacy under the Fourth Amendment, including during visual inspections of their bodies. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020) (en banc). The Fourth and Eighth Amendments provide distinct protections against unconstitutional searches and require separate inquiries. *Id.* at 780–81.

Under the Fourth Amendment, the court balances the need for the search against the invasion of personal rights, considering the scope of the intrusion, the manner in which the search was performed, its justification, and its location. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *Henry*, 969 F.3d at 784. This inquiry is objective; an officer's subjective intent does not control. *Henry*, 969 F.3d at 781. A search may serve a legitimate institutional objective yet violate the Fourth Amendment if conducted in an unreasonable manner or place. *Id.* Nevertheless, courts afford prison administrators wide-ranging deference in adopting and executing policies needed to preserve order and maintain security, absent substantial evidence that their response to those concerns was exaggerated. *Id.* at 783.

The Eighth Amendment protects against searches used as a form of punishment and thus requires a showing of subjective intent. *Henry*, 969 F.3d at 780–81. Thus, a strip search violates the Eighth Amendment when it is maliciously motivated and unrelated to institutional security, or is conducted in a harassing manner intended to humiliate and inflict psychological pain. *Jones v. Anderson*, 116 F.4th 669, 678 (7th Cir. 2024);

*Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). The embarrassment inherent in a legitimate strip search does not itself establish an Eighth Amendment violation. *Calhoun*, 319 F.3d at 939.

The defendants support their summary judgment motion with their affidavits and Malone's deposition testimony, which establish the following undisputed facts. At about 6:22 a.m. on June 24, 2024, correctional officers conducted a "shakedown" of the L Housing Unit (LHU). ECF 35-3 at 1; ECF 35-4 at 1. Sgts. Watson and Mallott both participated. *Id.* Following prison policy, the officers searched every cell and every inmate in the unit. *Id.* Neither defendant recalls why the shakedown was ordered that day, but Malone testified that Sgt. Watson told him the officers were searching for drugs. ECF 35-3 at 2; ECF 30 at 14.

The officers searched the inmates in their cells to afford them greater privacy. ECF 35-3 at 2. Sgt. Watson searched Malone; Sgt. Mallott was not present at Malone's cell during the search. ECF 35-3 at 1; ECF 35-4 at 2. Using the same procedure followed for the other inmates, Sgt. Watson directed Malone to run his hands through his hair, open his mouth, remove each item of clothing, and turn around and bend at the waist. ECF 35-3 at 2. Sgt. Watson did not touch Malone during the search. *Id.* After the visual inspection, he returned Malone's clothing one item at a time so Malone could dress. *Id.*

Both defendants attest that Malone's search was part of the prison's standard safety and security procedures, which were applied equally to all inmates in the LHU. ECF 35-3 at 2; ECF 35-4 at 2. They further attest that Malone was not singled out and that the search was not performed to harass him. *Id.*

On this record, no reasonable jury could find a Fourth Amendment violation. The search served a legitimate institutional purpose: locating drugs during a routine search of the entire housing unit. Searching inmates as well as their cells reasonably addresses the risk that contraband might be concealed on their persons. *See Bell*, 441 U.S. at 558–60. The defendants' inability to recall what prompted the shakedown that day does not create a genuine dispute about its security purpose in light of their uncontradicted affidavits and Malone's own testimony that Sgt. Watson told him the officers were looking for drugs. Malone's initial assertion in his complaint that there had been no riot or injury in the unit does not undermine that justification. *See* ECF 6 at 2. Prison officials may take reasonable steps to detect concealed contraband before it causes harm. *See Bell*, 441 U.S. at 558–60.

The scope, manner, and location of the search were also reasonable. Although requiring Malone to undress and bend at the waist intruded on his bodily privacy, the undisputed evidence shows a visual inspection directed at places where contraband could be concealed. Sgt. Watson did not touch Malone and returned his clothes after the inspection so he could dress. The officers also searched inmates in their cells to provide greater privacy. Nothing in the undisputed evidence suggests that the search extended beyond that inspection or that its manner or location was excessive in relation to its purpose. Balancing the intrusion against the prison's interest in detecting concealed drugs, no reasonable jury could conclude that the search was objectively unreasonable. *See Henry*, 969 F.3d at 783–84.

Nor could a reasonable jury find the subjective intent required for an Eighth Amendment violation. Both defendants attest that Malone's search was part of a routine security procedure applied to the entire housing unit and was not undertaken to harass him. The manner of the search supports that account: Sgt. Watson conducted the visual inspection in Malone's cell, did not touch him, and returned his clothes so he could dress. Malone has identified no evidence that the asserted security purpose was a pretext or that Sgt. Watson conducted the search to humiliate him or inflict psychological pain. Any embarrassment inherent in the inspection, without evidence of calculated harassment, is insufficient. *See Calhoun*, 319 F.3d at 939; *Jones*, 116 F.4th at 678. The defendants are therefore entitled to summary judgment on both constitutional theories.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 34); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Lavelle Malone and to close this case.

SO ORDERED on November 3, 2026.

/s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT